HEARD NOVEMBER TERM, 1874.

## DeSaussure *vs.* McClenaghan.

Where, in October, 1861, an administrator, by leave of the Ordinary, sold the personal estate of his intestate on credit, secured by notes payable in one, two and three years, with interest payable annually, and in stating his account it was assumed that the contracts were made with reference to payment in Confederate currency; that the principal and interest were paid as they became due, and that the Scaling Act applied to the case : *Held*, That the amounts should be charged and scaled not as of the date of the sale, but as of the dates when the principal and interest became due.

Where an administrator is charged with the amount of the sale bill, he should not, as a general rule, be charged with interest until the end of the year.

In stating the account of a deceased administrator on behalf of an administrator *de bonis non* of his intestate, interest should not be charged during the period that the estate of his intestate was unrepresented; but the liability for interest is not suspended from the time letters of administration *de bonis non* are sued out until action commenced against the representative of the administrator.

BEFORE CARPENTER, J., AT RICHLAND, AUGUST TERM, 1874.

This was an action for account brought by D. B. DeSaussure, administrator *de bonis non* of A. Brodie, deceased, against H. McClenaghan, administrator of C. H. Black, deceased, T. N. Gibson and R. H. Reaves, commenced September 8, 1874.

The facts were as follows:

Brodie died intestate in 1861, and on the 4th of September of that year Black sued out letters of administration on his estate. Gibson and Reaves were the sureties on his administration bond. On the 13th of September, 1861, the Ordinary of Richland District made an order for sale of the slaves,—of which the estate almost wholly consisted,—for one-sixth cash and for the balance on a "credit of one, two and three years, with interest from the day of sale, to be secured by well-endorsed notes payable at one of the

banks. Interest in all cases from date payable annually." On the 9th of October, 1861, the sale was made and it realized $6,482.81. Notes were taken according to the terms of the order, payable at the Commercial Bank, and were deposited in that bank for collection, and were all collected except three, each for $318. Black died in 1865, and in 1866 McClenaghan administered on his estate. When the plaintiff sued out letters of administration *de bonis non* on the estate of Brodie did not appear, but until the complaint in this action was filed no demand was made upon McClenaghan for settlement of the estate of Brodie or notice given him of the claim made by the complaint.

The case was referred to a Referee to state the account of Black as administrator of Brodie, and he made a report based upon the assumptions that the sale on the 9th of October, 1861, was made with reference to payment in Confederate currency; that the notes given for the credit portion had all been paid up except the three, each for $318, and that the Act known as the Scaling Act applied to the case, and he submitted it to the Court to decide as to the time at which the amounts charged against Black should be scaled. His Honor held, and so instructed the Referee, that the amounts should be scaled as of the date of the sale, and thereupon the Referee submitted a supplemental report in conformity with the instructions of the Court. In this report he charged interest on the cash portion of the sale from the 9th of October, 1861, the date of the sale, and on the credit portion from the same date until the 9th of October, 1864, when the last note became due, and then, adding principal and interest together, charged interest upon the aggregate from that date.

No exception was taken to the report, and it was confirmed by a decree of the Court dated the 24th of August, 1874.

The defendants appealed, and filed two exceptions to the decree, one dated August    , 1874, as follows:

For that in and by said decree it is adjudged that the Referee should adjust the account of Charles H. Black, administrator of Alexander Brodie, and ascertain his liability thereon "as of the time of the making of the contracts of sale," upon which day were executed the several notes given for the credit portion of the purchase money of the negroes sold.

Whereas the said decree should have adjudged as follows:

That the liability of Charles. H. Black, administrator of Alexander Brodie, should be ascertained as of the dates on which the several notes given for the payment of the purchase money of the negroes, sold by order of the Ordinary, matured; upon which several dates it is presumed that the administrator possessed himself of the funds. And that such were the proper dates for ascertaining the relative value of Confederate States notes and national currency in fixing the liability of the administrator.

And another, dated September 2, 1874, as follows:

1. For that in and by said decree the estate of Charles H. Black is charged with interest on all amounts coming into his hands from the date of the day of sale. Whereas the said decree should have adjudged as follows: That the estate of Charles H. Black, if at all liable, was only liable for interest on the several amounts received from the first day of January next after the same came into his hands or became due and payable.

2. For that in and by said decree the estate of Charles H. Black is charged with compound interest on a portion of the sale bill. Whereas the said decree should have adjudged as follows: That the estate of Charles H. Black, if at all liable, was only liable for simple interest on the several amounts received by him from the first day of January next after the same came into his hands or became due and payable.

3. For that in and by said decree the estate of Charles H. Black is charged with interest from the ninth day of October, 1861, the day of the sale, to the twenty-fourth day of August, 1874, the date of the decree. Whereas the said decree should have adjudged as follows: That the estate of Charles H. Black was not liable for interest on the funds in his hands during the interval between the death of Charles H. Black, the first administrator, on the          day of            , 1865, and the eighth day of September, 1874, the date of the filing of the complaint herein, upon which day demand was first made upon the administrator of Charles H. Black for.the fund, and prior to which time he had no knowledge that there was any one legally authorized to demand or receive the same.

*Evans, Melton & Clark,* for appellants.

*Butler & DeSaussure,* contra.

March 22, 1875.   The opinion of the Court was delivered by

WILLARD, A. J.   As the respondent has not raised the objection
of the want of exceptions to the Referee's report, this Court is
enabled to dispose of the questions discussed upon the hearing.

The defendant is sued as the administrator of Black, for the
default of Black as administrator of Brodie, for not accounting
for the estate of Brodie that came into his hands as such adminis-
trator.   The sureties on Black's administration bond are made
parties defendant with Black's administrator.

On the 13th of September, 1861, an order was made by the
Ordinary of Richland District directing Black, as administrator,
among other things, to sell a specified portion of the personal estate
of Brodie "for one-sixth cash, the balance upon a credit of one,
two and three years, well-endorsed notes to be given, payable at
one of the banks.   Interest in all cases from date, payable an-
nually."

The sale was made accordingly.   Notes were taken bearing date
October 7, 1861, payable in one, two and three years, and were
deposited in bank for collection.   The Referee, in stating the
account, charged the amount of these notes, on the assumption
that all of them, except three, had been paid, both as it regards
principal and interest, at the various dates at which they matured.
The result of the judgment confirming the Referee's report is that
Black's estate and sureties are, as to all the notes, except the three
unpaid, charged on the following principles:

First, that the notes were considered as given with reference to
payment in Confederate currency; second, the value of the princi-
pal of the notes is computed according to the standard of relative
values set forth in what is called the Scaling Act, (14 Stat., 277,)
as the relative values of Confederate notes and lawful money are
stated by that Act as existing on the day of the date of the notes;
third, interest on the value of the principal of the notes thus ascer-
tained is charged as if it were cash in the hands of Black at the
date of the notes.

This mode of stating the account holds Black's estate accounta-
ble for the whole amount of interest annually accruing on the
notes prior to maturity in lawful money; whereas, on the assump-
tion that the notes were originally intended to be paid in Con-
federate currency, and on the further assumption that the annually

accruing interest was paid according to the intention of the notes, Black would only have received Confederate currency in payment of such interest as of the respective dates when interest fell due.

The foregoing statement presents with sufficient fullness the nature of the legal question involved in the first exception. It is contended by the appellants, in substance, that the account should have been stated as if the principal and interest of the notes had been paid into Black's hands in Confederate currency at the respective dates at which such principal and interest matured and became payable, and that Black should have been charged at these respective dates with the value in good money of the Confederate currency thus received. On the other hand, the respondents claim that the judgment of the Circuit Court is correct in charging Black, upon the basis of turning Confederate values into good money as of the date of the notes.

The controversy arises upon a misconception of the force of the Scaling Act. It is not necessary to resort to that Act for the basis of the liability of the administrator. He is chargeable with assets coming into his hands according to the value of such assets at the time his responsibility in regard to them arises. This is true both of the original assets and of assets substituted in the place of original, as the notes in the present case were by the order of sale made by the Ordinary, which is assumed, for the purpose of this case, to have been properly carried into effect by the taking of notes payable in Confederate currency.

The object of the "Scaling Act" is to assist in the adjustment of contracts intended by the parties to be liquidated in Confederate money by furnishing a legislative declaration of the relative values of Confederate money and lawful money, which should be conclusive between the parties in the absence of direct testimony as to the existing state of those values.—*Neely* vs. *McFadden*, 2 S. C., 169.

The charges against Black's estate rest on the assumption that the payments called for by these notes, both as it regards principal and interest, were actually made in Confederate money at the respective times when, according to the tenor of the notes, they fell due. Following this assumption, which, as it is not the ground of exception, must be taken as a fact in this case, it would result that the account should have been stated on the following principles:

1. He should have been charged with the actual value, in good money, at the time of payment of the Confederate currency re-

ceived, either as principal or interest, assuming such payments to have been made at the times called for by the notes.

2. In charging his estate with interest on the moneys held in his hands, such interest account should be based upon the value in good money of the Confederate currency that came into his hands, having regard to the date of its receipt.

The case of a single one of these notes will illustrate the application of these principles. Take one of the notes having three years to run, carrying interest payable annually. At the end of the first year, from the date of this note, Black's estate should be charged with an amount of cash equal to the value in good money of the amount of interest payable on that note at the end of one year. At the end of the second year a similar charge should be made, the value of Confederate currency at the time of actual receipt being the basis of ascertaining the amount charged in cash. At the end of the third year the balance of interest and the principal should together be turned into good money value and be charged as of that date.

The first exception is well taken, and the report of the Referee and the judgment based upon it was erroneous.

The first of the exceptions, dated September 2d, 1874, is to the effect that Black should not have been charged interest upon the sale bill until the end of the current year, to wit, the first of January then next ensuing.

This objection is in conformity with the rule considered and applied in *Davis* vs. *Wright,* 2 Hill, 560.—See *Jones* vs. *West,* in note to this case. According to that authority interest should not be charged on receipts from the sale bill, or other source, during the year in which they are received. The present case is not entitled to the benefit of the point ruled in *Dixon* vs. *Hunter,* (3 Hill, 204.) There the administrator presented an account full, specific and complete, giving the date and amount of each receipt and disbursement, so that an interest account could be accurately stated according to the facts. That was clearly not a case for the application of a rule that claims merely to approximate the truth of the account, as in that case the truth of the account was spread out before the Court; but in this case the statement is at least an approximation, as the accounts are not and cannot be made full. It is therefore a case for applying the rule considered and settled in *Davis* vs. *Wright.*

There has been in this case an entire departure from the method of settling the accounts enforced by that rule. If it were practicable, this Court would open the accounting only so far as it regards the particular features objected to, inasmuch as no general objection is interposed to the method of statement, but the particular objections are of such a nature that it renders a statement necessary.

If the account is properly stated, the objection raised by the second exception will be obviated. It is therefore not necessary to consider what force there is in that objection under the mode of statement adopted in the present case.

The rule for settling the accounts of administrators, laid down in *Davis* vs. *Wright,* is so clearly stated and so well understood that it is not necessary that we should further illustrate or explain it.

The last exception claims that interest should not have been charged against Black's estate in the defendant's hands during the period when Brodie's estate was unrepresented, so that Black's administrator could not make a settlement. This point has been definitely ruled in *Davis* vs. *Wright,* which sustains the ground of this exception. The circumstances of the two cases are strictly analogous, and that authority fully disposes of the exception under consideration.

This exception goes, however, a step further, and claims that interest ought not to be charged until the complaint was filed. We cannot concur in this view. The moment there was a representative of the estate to whom it was possible to make payment, the reason of the rule suspending interest ceases.

The judgment and report of the Referee should be set aside and the case remanded for a statement of the account on the foregoing principles.

*Moses,* C. J., and *Wright,* A. J., concurred.